[No. B188210. Second Dist., Div. Two. Feb. 6, 2008.]

MILOS DOUDA et al., Plaintiffs and Appellants, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Respondent.

## COUNSEL

Cox, Castle & Nicholson, Stanley W. Lamport and James R. Repking for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, J. Matthew Rodriquez, Assistant Attorney General, John A. Saurenman and G. R. Overton, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**ASHMANN-GERST, J.**—This appeal raises two challenges to the jurisdiction of the California Coastal Commission (Commission) to regulate, namely: (1) Does the Commission have the power to unilaterally designate environmentally sensitive habitat areas and thereby prevent development? (2) Does the Commission have the power to prevent development on land four and a half miles from the ocean on the grounds that the development will impair scenic and visual resources of a coastal zone that extends five miles inland into the Santa Monica Mountains? Below, the Commission denied the application filed by appellants Milos Douda and Trisha Douda (collectively the Doudas) for a coastal development permit to build a home, finding that their property contains an environmentally sensitive habitat area that had not been designated in the Los Angeles County land use plan, and that the proposed development would impair scenic and visual resources. The Doudas filed a petition for writ of administrative mandate to challenge the denial of their application. The trial court upheld the Commission's action, and the Doudas now appeal. After reviewing the record, we conclude that the trial court properly denied relief.

We affirm.

## FACTS

*The California Coastal Act of 1976*

In 1976, the Legislature enacted the California Coastal Act of 1976 (Coastal Act), which became division 20 of the Public Resources Code. (Stats. 1976, ch. 1330, § 30000 et seq., pp. 5950–6027; Pub. Resources Code, § 30000 et seq.)[1] The Legislature declared that "the California coastal zone is a distinct and valuable natural resource of vital and enduring interest to all the people . . . ," that "the permanent protection of the state's natural and scenic resources is a paramount concern to present and future residents of the state and nation . . . ," and that "to promote the public safety, health, and welfare, and to protect public and private property, wildlife, marine fisheries, and other ocean resources, and the natural environment, it is necessary to protect the ecological balance of the coastal zone and prevent its deterioration and destruction." (§ 30001, subds. (a)–(c).)

Under the Coastal Act, each local government must either prepare a local coastal program for the portion of the coastal zone within its jurisdiction, or request that the Commission prepare it. (§ 30500, subd. (a).) The content of a local coastal program "shall be determined by the local government . . . in full consultation with the commission and with full public participation." (§ 30500, subd. (c).) A local coastal program is defined as a local government's land use plans, zoning ordinances, zoning district maps and other actions which, when taken together, implement the provisions and policies of the Coastal Act. (§ 30108.6.) " 'Land use plan' means the relevant portions of a local government's general plan, or local coastal element which are sufficiently detailed to indicate the kinds, location, and intensity of land uses, the applicable resource protection and development policies and, where necessary, a listing of implementing actions." (§ 30108.5.) Pursuant to the Coastal Act, the land use plan of a local coastal program must be submitted to a regional coastal commission for review or, if a regional coastal commission does not exist, for approval and certification by the Commission. (§ 30512, subd. (a).) If approved by the regional coastal commission, the land use plan of a local coastal program must be forwarded to the Commission for certification. The Commission must certify the land use plan of a local coastal program if it does not raise a substantial issue as to conformity with the

---

[1] All further statutory references are to the Public Resources Code unless otherwise indicated.

policies of chapter 3 of the Coastal Act. (§ 30512, subds. (a)–(c).)[2] Additionally, the local government must submit the zoning ordinances, zoning district maps, and other implementing actions to the Commission for approval. (§ 30513.)

In pertinent part, chapter 3 of the Coastal Act provides that "[e]nvironmentally sensitive habitat areas shall be protected against any significant disruption of habitat values, and only uses dependent on those resources shall be allowed within those areas." (§ 30240, subd. (a).) It goes on to provide that "[t]he scenic and visual qualities of coastal areas shall be considered and protected as a resource of public importance." (§ 30251.) Pursuant to section 30502, subdivision (a), the Commission was given until September 1, 1977, to designate sensitive coastal resource areas within the coastal zone. The Legislature gave the Commission the authority to extend that deadline for up to a year. (§ 30517.)

The Coastal Act requires a person wishing to undertake development in the coastal zone to obtain a coastal development permit. (§ 30600, subd. (a).) Prior to certification of a local coastal program, and absent a local government procedure for issuing coastal development permits, the Commission or local government shall issue coastal development permits. (§ 30600, subd. (c).) "After certification of its local coastal program or pursuant to the provisions of Section 30600.5, a coastal development permit shall be obtained from the local government as provided for in Section 30519 or section 30600.5." (§ 30600, subd. (d).) Section 30519, subdivision (a) provides that after certification, and after all implementing actions have become effective, "the development review authority provided for in [c]hapter 7 (commencing with [s]ection 30600) shall no longer be exercised by the commission over any new development proposed . . . ," except for appeals to the Commission. The review authority shall be delegated "to the local government that is implementing the local coastal program, or any portion thereof." (§ 30519, subd. (a).)

Section 30604, subdivision (a) of the Coastal Act provides in relevant part: "Prior to certification of the local coastal program, a coastal development

---

[2] Section 30512.2 provides: "The following provisions shall apply to the commission's decision to certify or refuse certification of a land use plan pursuant to Section 30512: [¶] (a) The commission's review of a land use plan shall be limited to its administrative determination that the land use plan submitted by the local government does, or does not, conform with the requirements of Chapter 3 (commencing with Section 30200). In making this review, the commission is not authorized by any provision of this division to diminish or abridge the authority of a local government to adopt and establish, by ordinance, the precise content of its land use plan. [¶] (b) The commission shall require conformance with the policies and requirements of Chapter 3 (commencing with Section 30200) only to the extent necessary to achieve the basic state goals specified in Section 30001.5."

permit shall be issued if the issuing agency, or the commission on appeal, finds that the proposed development is in conformity with the [provisions of] [c]hapter 3 [of division 20] and that the permitted development will not prejudice the ability of the local government to prepare a local coastal program that is in conformity with the [provisions of] [c]hapter 3 . . . ." Subdivision (b) provides: "After certification of the local coastal program, a coastal development permit shall be issued if the issuing agency or the commission on appeal finds that the proposed development is in conformity with the certified local coastal program." (§ 30604, subd. (b).)

*The Los Angeles County land use plan for the Santa Monica Mountains*

In 1986, Los Angeles County adopted a land use plan for the coastal zone in the Santa Monica Mountains (land use plan). The Commission certified the land use plan. But the Commission never approved any implementing ordinances or zoning maps for the land use plan, and Los Angeles County does not have a certified local coastal program in the Santa Monica Mountains.[3] The land use plan provides for the additional designation of environmentally sensitive habitat areas in unspecified areas through biotic review process or other means. (*LT-WR, L.L.C. v. California Coastal Com.* (2007) 152 Cal.App.4th 770, 790 [60 Cal.Rptr.3d 417] (*LT-WR*).)

The Commission retained permitting authority.

*The Doudas' application for a coastal development permit*

On November 29, 2001, the Doudas filed an application for a coastal development permit with the Commission.[4] They sought to construct a 5,804-square-foot, 35-foot high, two-story, single-family residence, a 1,092-square-foot garage, a septic system, and a pool and spa.

The Commission's staff recommended denial. It asserted that the proposed development would be highly visible by the public traversing Mulholland

---

[3] The parties did not cite any evidence pertaining to the land use plan, its certification, or the lack of a local coastal program. We accept the facts as presented in unsupported statements in the Doudas' opening brief. The facts are not disputed by the Commission. Also, the trial court either found or assumed that there is a land use plan but no local coastal program.

[4] In general, the statutory coastal zone is defined as the land and water "extending seaward to the state's outer limit of jurisdiction . . . and extending inland generally 1,000 yards from the mean high tide line of the sea." (§ 30103, subd. (a).) However, in "significant coastal estuarine, habitat, and recreational areas[, the coastal zone] extends inland to the first major ridgeline paralleling the sea or five miles from the mean high tide line of the sea, whichever is less." (§ 30103, subd. (a).) The coastal zone boundary in Los Angeles County is set forth in section 30166. Subdivision (a) of that section provides that in three locations in the Santa Monica Mountains, the boundary is moved to the five-mile limit described in section 30103. The property is in the Santa Monica Mountains and it is within a designated coastal zone.

highway and planned public trails, and would be inconsistent with section 30251. Next, it concluded that the coastal sage scrub and chaparral on the Doudas' property met the definition of an environmentally sensitive habitat area under the Coastal Act. The staff also concluded that the proposed development would prejudice the ability of Los Angeles County to prepare a local coastal program for the Santa Monica Mountains and that the California Environmental Quality Act (§ 21000 et seq.) required less invasive proposals. By a vote of eight to zero, the Commission denied the Doudas' application.

*The petition for writ of administrative mandate*

The Doudas filed a petition for writ of administrative mandate to vacate the denial of their petition for a coastal development permit, and a related complaint for declaratory relief. In part, they alleged that the Commission did not have the authority to designate an environmentally sensitive habitat area, or to impose scenic and visual resource regulations on the property.

After trial, the trial court issued a statement of decision, which provided: Because the Doudas did not object to the Commission's authority to protect scenic and visual resources in the coastal zone when considering permit applications, the Doudas did not exhaust their administrative remedies as to that issue. Furthermore, the denial of the Doudas' application must be upheld based on the Commission's finding that the property contains an environmentally sensitive habitat area. Once the Commission certifies a land use plan, it has no authority to designate additional environmentally sensitive habitat areas, except as provided by the land use plan. The Los Angeles County land use plan provides for the identification of additional environmentally sensitive habitat areas through biotic review process or other means. Thus, the Commission had to determine whether the proposed development conformed to chapter 3 of the Coastal Act, which required it to determine whether the property contained an environmentally sensitive habitat area. Substantial evidence supported its finding that section 30240, subdivision (a) was implicated.

Judgment was entered against the Doudas.

This timely appeal followed.

## STANDARD OF REVIEW

When asked to rule upon a petition for writ of administrative mandate, a trial court is called upon to inquire "whether the agency in question prejudicially abused its discretion; that is, whether the agency action was arbitrary,

capricious, in excess of its jurisdiction, entirely lacking in evidentiary support, or without reasonable or rational basis as a matter of law. [Citations.]" (*Sierra Club v. County of Napa* (2004) 121 Cal.App.4th 1490, 1497 [19 Cal.Rptr.3d 1].) On appeal, we review the administrative record under the same standard that governs the trial court. (*Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1375–1376 [43 Cal.Rptr.2d 170].)

## DISCUSSION

1. *The issuing agency (whether it is the Commission or a local government) can identify environmentally sensitive habitat areas prior to the certification of a local coastal program.*

In *LT-WR*, the court held that the Commission can designate environmentally sensitive habitat areas in the Santa Monica Mountains pursuant to the land use plan. (*LT-WR, supra,* 152 Cal.App.4th at p. 793.) The Doudas argue that *LT-WR* was wrongly decided and should not be followed. In their view, the Commission (and therefore the issuing agency, regardless of which it is) has only one function, which is to determine whether a proposed development conforms to a certified land use plan or certified local coastal program. The Commission, on the other hand, contends that the issuing agency is obligated to uphold section 30240, even if that means designating a new environmentally sensitive habitat area.

We turn to the issue at hand.

Under the Coastal Act, the Commission "is required to protect the coastal zone's delicately balanced ecosystem." (*Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493, 506 [83 Cal.Rptr.2d 850] (*Bolsa Chica*).) When considering a proposed project governed by the Coastal Act, the Commission must examine the effect of a project on the coastal environment. (71 Cal.App.4th at p. 506.) The Coastal Act establishes that environmentally sensitive habitat areas shall be protected. (§ 30240, subd. (a).) The policies in chapter 3 of the Coastal Act "constitute the standards by which the adequacy of local programs . . . and the permissibility of proposed developments subject to the provisions of [division 20] are determined." (§ 30200, subd. (a).) These last two statutory directives apply, by nature of their generality, to the issuing agency, regardless of whether that is the Commission or a local government.

Our task is to interpret an issuing agency's authority to protect an environmentally sensitive habitat area in light of these statutes. " 'When interpreting a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citation.] We must "look first to the

words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" [Citation.] A close cousin of the foregoing quote is the rule " 'that the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation.' [Citations.]" [Citation.]' " (*Carson Redevlopment Agency v. Padilla* (2006) 140 Cal.App.4th 1323, 1332 [44 Cal.Rptr.3d 881].) ██ Finally, and in addition to the foregoing rules of construction, the Coastal Act specifically provides that it "shall be liberally construed to accomplish its purposes and objectives." (§ 30009.)

██ The Coastal Act does not identify which entity is empowered to designate environmentally sensitive habitat areas. Impliedly, it contemplates the designation of environmentally sensitive habitat areas in land use plans and local coastal programs because they are, in part, the means by which the policies of the Coastal Act are implemented. Local coastal programs are prepared either by the Commission, or by the local government in full consultation with the Commission. (§ 30500, subds. (a), (b).) A land use plan is part of a local coastal program, and it must be submitted to the Commission for approval and certification. (§ 30512, subd. (a).) If the Commission rejects a land use plan, it may suggest modifications. (§ 30512, subd. (b).) As explained by section 30108.5, a land use plan is the relevant portion of a local government's general plan which indicates the applicable resource protection and development policies. Thus, the Coastal Act envisions that land use plans and local coastal programs will be collaborative efforts between local governments and the Commission.

██ Once a local coastal program is certified, the issuing agency has no choice but to issue a coastal development permit as long as the proposed development is in conformity with the local coastal program. (§ 30604, subd. (b).) In other words, an issuing agency cannot deviate from a certified local coastal program and designate an additional environmentally sensitive habitat area. But prior to the certification of a local coastal program, the issuing agency has a different task. It must determine whether the proposed development, inter alia, is in conformity with the provisions of chapter 3 of the Coastal Act, which includes section 30240.

■ If a local coastal program has not been certified, can the issuing agency designate an environmentally sensitive habitat area? The Coastal Act is silent. In resolving this uncertainty, we must keep in mind the purpose of the Coastal Act and examine the consequences that will flow from the differing interpretations that the Commission and the Doudas urge upon us. Also, we keep in mind that the Coastal Act specifically provides heightened protection for environmentally sensitive habitat areas through section 30240. (*Sierra Club v. California Coastal Com.* (1993) 12 Cal.App.4th 602, 613 [15 Cal.Rptr.2d 779] (*Sierra Club*).)

If we accept the Doudas' interpretation, it is possible that land which meets the definition of an environmentally sensitive habitat area will be subject to irrevocable alteration through development that violates the policies of the Coastal Act. This is so because the issuing agency will be powerless to protect any such areas prior to their designation by a local government in a certified land use plan or a certified local coastal program.[5] Thus, the issuing agency will be prohibited from carrying out its obligation under section 30604, subdivision (a) at a time when certain natural resources have no protection. On the other hand, the Commission's interpretation will allow the issuing agency to protect natural resources for the benefit of the public by designating new areas for protection when they meet the definition of an environmentally sensitive habitat area. Undeniably, this interpretation more closely comports with the declared and salutary purposes of the Coastal Act.

■ Notably, the oversight given to an issuing agency prior to the certification of a local coastal program is much broader than the oversight given to it after certification. In the latter case, the issuing agency must do no more than confirm compliance with the policies of the Coastal Act. In the former case, there is no such constraint. The Coastal Act does not parse what policies should be specifically enforced, or how they should be enforced. Ostensibly, the issuing agency is given wide latitude to examine conformity with all Coastal Act policies. If the Legislature intended to restrict the power of the issuing agency under section 30604, subdivision (a), it would have used language similar to the limiting language in section 30604, subdivision (b). For example, the Legislature could have provided that prior to certification of a local coastal program, the issuing agency must do no more than confirm compliance with the certified land use plan. But the Legislature chose broader language, which suggests that it intended to give subdivisions (a) and (b) of section 30604 divergent meaning. (*In re Young* (2004) 32 Cal.4th 900, 907 [12 Cal.Rptr.3d 48, 87 P.3d 797] [" 'Where a statute referring to one

---

[5] The Doudas interpretation might even go further. In their opening brief, they aver that a local coastal program "is the document that gives practical effect to the provisions and policies in the Coastal Act." Taken to its logical conclusion, this would mean that environmentally sensitive habitat areas are not protected until there is a local coastal program.

subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent.' "].)

It is no doubt true that the Coastal Act is premised on the theory that local governments will carry much of the load of implementation. Indeed, section 30004 provides: "The Legislature further finds and declares that: [¶] (a) To achieve maximum responsiveness to local conditions, accountability, and public accessibility, it is necessary to rely heavily on local government and local land use planning procedures and enforcement." But insofar as this provision and others can be construed, as the Doudas suggest, as representing a policy of giving sole power to local governments to control their land use and taking away all such power from the Commission when it is an issuing agency, that policy conflicts with the policy of protection in section 30200, subdivision (a) and section 30604, subdivision (a). To resolve that conflict, we turn to section 30007.5, which provides: "The Legislature further finds and recognizes that conflicts may occur between one or more policies of the division. The Legislature therefore declares that in carrying out the provisions of this division such conflicts be resolved in a manner which on balance is the most protective of significant coastal resources." Thus, section 30007.5 requires us to favor the Commission's interpretation over the Doudas' interpretation because it permits greater oversight and protection for environmentally sensitive habitat areas.

■ Additionally, we find it significant that the Coastal Act is silent regarding who is responsible for implementing section 30240. Section 30330 provides: "The commission, unless specifically otherwise provided, shall have the primary responsibility for the implementation of the provisions of this division and is designated as the state coastal zone planning and management agency for any and all purposes, and may exercise any and all powers set forth in the Federal Coastal Zone Management Act of 1972 . . . or any amendment thereto or any other federal act heretofore or hereafter enacted that relates to the planning or management of the coastal zone." Because it was not otherwise *specifically* provided, the primary responsibility for implementing section 30240, by default, must go to the Commission.

We do, though, have a concern regarding the Commission's interpretation. What role, if any, should a certified land use plan play in an issuing agency's decision to deny or approve a coastal development permit? To promote efficiency and good will between agencies, and prevent injurious reliance by property owners, we believe that the issuing agency should consider the contents of a certified land use plan in making a decision. If it ignores the certified land use plan, then the decision may be subject to reversal if a reviewing court finds that the decision was arbitrary and capricious. In other

words, the issuing agency must have a good reason for ignoring a certified land use plan, such as a significant change of conditions.

■ Section 30512.2, which applies to the Commission's review of a land use plan, offers further guidance. Under subdivision (b) of section 30512.2, "[t]he commission shall require conformance with the policies and requirements of Chapter 3 (commencing with Section 30200) only to the extent necessary to achieve the basic state goals specified in Section 30001.5." Section 30001.5 establishes that the Legislature's basic goals are to: "(a) Protect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources. [¶] (b) Assure orderly, balanced utilization and conservation of coastal zone resources taking into account the social and economic needs of the people of the state. [¶] (c) Maximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners. [¶] (d) Assure priority for coastal-dependent and coastal-related development over other development on the coast. [¶] (e) Encourage state and local initiatives and cooperation in preparing procedures to implement coordinated planning and development for mutually beneficial uses, including educational uses, in the coastal zone." These provisions demonstrate that the Legislature intended to curb the Commission's ability to champion its own agenda over the decisions made by local governments, and over the constitutional rights of property owners who live in a coastal zone. The Commission and an issuing agency both have oversight functions, and their analogous functions provide a reason to apply the policy of these provisions to any issuing agency. Thus, in reviewing an application for a coastal development permit prior to the certification of a local coastal program, an issuing agency should deny a permit based on a previously undesignated environmentally sensitive habitat area only when necessary to achieve the Legislature's basic goals. Only by exercising such restraint can an issuing agency avoid becoming a de facto manager for a local government's land use planning and development.

Based on our interpretation of the statutory scheme, we conclude that *LT-WR* was correctly decided.

2. *An issuing agency's ability to identify environmentally sensitive habitat areas is not curtailed by section 30502.*

■ According to the Doudas, the Legislature limited the Commission's power to designate environmentally sensitive habitat areas through section 30502. That statute gave the Commission only until September 1, 1977, to designate sensitive coastal resource areas. (§ 30502.) The Doudas claim

the environmentally sensitive habitat areas fall within the definition of sensitive coastal resource areas and are subject to the same restrictions on implementation.

Our view of the statutes is otherwise.

 The Coastal Act identifies sensitive coastal resource areas as "those identifiable and geographically bounded land and water areas within the coastal zone of vital interest and sensitivity" and include "(a) Special marine and land habitat areas, wetlands, lagoons, and estuaries as mapped and designated in Part 4 of the coastal plan. [¶] (b) Areas possessing significant recreational value. [¶] (c) Highly scenic areas. [¶] (d) Archaeological sites referenced in the California Coastline and Recreation Plan or as designated by the State Historic Preservation Officer. [¶] (e) Special communities or neighborhoods which are significant visitor destination areas. [¶] (f) Areas that provide existing coastal housing or recreational opportunities for low- and moderate-income persons. [¶] (g) Areas where divisions of land could substantially impair or restrict coastal access." (§ 30116.)

The phrase "environmentally sensitive habitat areas" is not defined in the Coastal Act. But the phrase "[e]nvironmentally sensitive area" is defined in section 30107.5, and that definition has been accepted as the description of environmentally sensitive habitat areas. (*Sierra Club v. County of Napa, supra,* 121 Cal.App.4th at p. 1497.) Section 30107.5 provides: " 'Environmentally sensitive area' means any area in which plant or animal life or their habitats are either rare or especially valuable because of their special nature or role in an ecosystem and which could be easily disturbed or degraded by human activities and developments."

 The *LT-WR* court accepted that section 30107.5 provides the definition for environmentally sensitive habitat areas and, accordingly, held that "[t]he term 'sensitive coastal resource area' is not synonymous with 'environmentally sensitive area.' . . . [¶] It was only the Commission's authority to designate 'sensitive coastal resource areas' which expired in 1978. [Citations.] The Commission did not lose its authority to protect [environmentally sensitive habitat areas]. To the contrary, the Commission has an ongoing duty to protect [environmentally sensitive habitat areas]. [Section 30240] states, *without any limitation as to time*: '(a) Environmentally sensitive habitat areas shall be protected against any significant disruption of habitat values,* and only uses dependent on those resources shall be allowed within those areas. [¶] (b) Development in areas adjacent to environmentally sensitive habitat areas and parks and recreation areas shall be sited and designed to prevent impacts which would significantly degrade those areas, and shall be compatible with the continuance of those habitat and recreation areas.' (Italics

added.) [¶] In sum, the Legislature provided the Commission only a brief period in which to designate *sensitive coastal resource areas*. [Citations.] However, that limitation does not prevent the Commission from implementing its obligation to protect [environmentally sensitive habitat areas] pursuant to [section 30240]." (*LT-WR*, *supra*, 152 Cal.App.4th at pp. 792–793.)

We agree with *LT-WR*.

 Section 30116 refers to "land habitat areas," but only those that were "mapped and designated in Part 4 of the coastal plan." The coastal plan "means the California Coastal Zone Conservation Plan prepared and adopted by the California Coastal Zone Conservation Commission and submitted to the Governor and the Legislature on December 1, 1975, pursuant to the California Coastal Zone Conservation Act of 1972 (commencing with Section 27000)." (§ 30102.) Therefore, the reference to habitat areas in section 30116 does not specifically pertain to areas other than those which were identified in 1975. Also, section 30502.5 required the Commission to recommend sensitive coastal resource areas for designation by statute. A recommendation placed the area in the sensitive coastal resource area category for no more than two years. If two years passed without a designation by statute, then the area was no longer designated as a sensitive coastal resource. (§ 30502.5.)

 In contrast, section 30107.5 and section 30240 are not restricted to stated designations, they do not contain a limiting temporal element, they do not require that designations be specified in a statute, and they apply to "any area in which plant or animal life or their habitats are either rare or especially valuable." (§ 30107.5.) In other words, they require all environmentally sensitive habitat areas to be protected, whether they are designated in the past, present or future, and they operate to preserve "rare" and "especially valuable" resources, special types of resources which are not acknowledged in the language of section 30116.

 In our view, the definitions in sections 30107.5 and 30116 are not interchangeable. If they were, one would be superfluous. Our task, in part, is to ensure that every word, phrase and sentence in a statutory scheme be given significance. We acknowledge that there is theoretical overlap between the two insofar as environmentally sensitive habitat areas could be viewed as a subset that fits within the scope of habitats covered by section 30116. Even if so, the overlap does not mean that the restrictions in section 30502 should apply to section 30240. The overlap only means that, prior to the expiration of the authority granted under section 30502, environmentally sensitive habitat areas could be protected under the auspices of two statutes. Now they can be protected solely under section 30240. In any event, nothing in section

30240 incorporates the restrictions in section 30502. Also, excluding environmentally sensitive habitat areas from the time restriction in section 30502 has the effect of promoting greater protection of our natural resources. For these reasons, we conclude that the restrictions in section 30502 do not apply to the Commission's ability to protect environmentally sensitive habitat areas under section 30240.

This conclusion is supported by the observation that section 30240 is not specific to the Commission. It provides guidance to any issuing agency, whether that agency is the Commission or a local government. If section 30240 was circumscribed by section 30502, then a local government acting as an issuing agency prior to the certification of a local coastal program would be rendered powerless to protect environmentally sensitive habitat areas that are undesignated. This does not comport with the directive in section 30240 that such areas "shall" be protected.

The Doudas complain that the Legislature did not intend to give so much power to an appointed body that is not answerable to the electorate. But this view is not supported by the statutory scheme. Also, we do not share the Doudas' concern over the grant of power. The power is subject to review through the courts via a writ of administrative mandate. Also, the power is given to the issuing agency, not to the Commission in particular.

Due to our interpretation, it is not necessary to consider the Doudas' discussion of the legislative history regarding section 30502 and the Commission's historical interpretation of that statute.

3. *Section 30500 and the scheme for review of local coastal programs and land use plans do not conflict with our interpretation.*

 Section 30500, subdivision (c) provides, in relevant part: "The precise content of each local coastal program shall be determined by the local government, consistent with Section 30501, in full consultation with the Commission and with full public participation." Pursuant to section 30512, the Commission's review of a land use plan is limited to a determination as to whether the land use plan conforms to the policies of the Coastal Act. Moreover, in making its review, section 30512.2, subdivision (a) provides that "the commission is not authorized by any provision of this division to diminish or abridge the authority of a local government to adopt and establish, by ordinance, the precise content of its land use plan."

The Doudas contend that these provisions establish that local governments essentially have exclusive say over the content of land use plans and local coastal programs. We disagree. The more reasonable interpretation is that the Commission, when it is the issuing agency, is obligated to reject developments that contravene the policies of the Coastal Act. However, it has no power to force a local government to select one use that conforms to the policies of the Coastal Act over other uses that also conform. If there are multiple conforming uses, then only the local government can determine which of those conforming uses will be allowed. This interpretation preserves an issuing agency's oversight duties while at the same time preserving the right of local governments to plan their communities.

Next, the Doudas complain that if an issuing agency can identify environmentally sensitive habitat areas, it can hold a local government hostage by refusing to certify a local coastal program until the local government agrees to designations that the Commission dictates. We acknowledge that our interpretation of the Coastal Act could pit local governments against issuing agencies, as is the case here.[6] But we cannot rewrite the statutory scheme. Suffice it to say, section 30240 affects a small portion of the coastal zone, an issuing agency's decisions must be tempered by restraint and recognition of the minimum necessary regulation, and a local government can take issuing duties away from the Commission by putting together a local coastal program and having it certified. These realities limit the impact the Commission will have on the use of land in coastal zones.

4. *The issuing agency's authority to regulate scenic and visual resources.*

The Doudas argue that the Commission lacked the authority to regulate scenic and visual resources four and a half miles inland.[7] We cannot concur.

Section 30251 provides: "The scenic and visual qualities of coastal areas shall be considered and protected as a resource of public importance. Permitted development shall be sited and designed to protect views to and along the ocean and scenic coastal areas, to minimize the alteration of natural land forms, to be visually compatible with the character of surrounding areas,

---

[6] The Commission's expert and Los Angeles County's expert disagreed as to whether the Doudas' property constitutes an environmentally sensitive habitat area.

[7] The trial court ruled that the Doudas waived their objection to the Commission's power to regulate scenic and visual resources by failing to argue the issue at the administrative hearing. But whether the Coastal Act permitted the Commission to regulate is a question of law for the courts, and it was beyond the Commission's jurisdiction to decide. Therefore, the Doudas were not required to raise this argument before the Commission. (*Richman v. Santa Monica Rent Control Bd.* (1992) 7 Cal.App.4th 1457, 1463–1464 [9 Cal.Rptr.2d 690].)

and, where feasible, to restore and enhance visual quality in visually degraded areas. New development in highly scenic areas such as those designated in the California Coastline Preservation and Recreation Plan prepared by the Department of Parks and Recreation and by local government shall be subordinate to the character of its setting."

According to the Doudas, section 30251 is limited to coastal areas, which term is not synonymous with coastal zones. They contend that it refers to an area on or along the ocean. But the Coastal Act does not define the phrase "coastal areas." Our directive, pursuant to section 30009, is to construe the Coastal Act broadly to achieve its purposes and objectives. Construed broadly, section 30251 is coextensive with the applicable coastal zone. Also, construing coastal areas as a smaller area than the coastal zone is problematic. If a coastal area is smaller than the defined coastal zone, the issuing agency and local governments will have no guidance as to where the coastal area ends. The Doudas' interpretation might require constant litigation. Ultimately, the courts would be required to draw coastal areas.

 Section 30251 refers to the Department of Parks and Recreation's (Department) California Coastline Preservation and Recreation Plan. The scope of the statute incorporated the Department's plan in providing recreation along the coastal landscape province. The plan stated: "The landward boundary coincides generally with the physiographic boundary of the coastal mountains where sea breezes and sea fogs are still active, but never less than one-half mile inland." Additionally, it stated that the Santa Monica Mountain range was one of three mountain ranges within the coastal landscape province. Therefore, section 30251 identifies the Santa Monica Mountains as a highly scenic area designated in the Department's plan, and it requires that new development in that area be subordinate to the character of its setting. This bolsters the interpretation that the Commission's power to regulate scenic and visual resources (especially as to the Santa Monica Mountains) extends inland as far as the boundary of the coastal zone.

 The Doudas point out that "[h]ighly scenic areas" are referenced in section 30116 and fall within the ambit of section 30502. While this may be true, it simply means that there is overlap between section 30502 and section 30251. As with section 30240, we note that section 30251 provides a directive to the issuing agency generally, not to the Commission specifically. Also, the language of section 30251 contains no restrictions. Based on a liberal construction, we conclude that the restrictions of section 30502 cannot be implied into section 30251.

## DISPOSITION

The order denying the Doudas' petition for writ of administrative mandate is affirmed. The Commission shall recover its costs on appeal.

Doi Todd, Acting P. J., and Chavez, J., concurred.

A petition for a rehearing was denied March 4, 2008, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 14, 2008, S161831.