Filed 10/9/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARK GREENE et al., | B293301 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BS165764) |
| v. | |
| CALIFORNIA COASTAL COMMISSION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Pacific Legal Foundation, Jeffrey W. McCoy, Lawrence G. Salzman and Joshua P. Thompson; Dignity Law Group and David R. Greene for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Daniel A. Olivas, Senior Assistant Attorney General, Christina Bull Arndt, Andrew M. Vogel, and Erica B. Lee, Deputy Attorneys General, for Defendant and Respondent.

In this appeal, appellants Mark and Bella Greene challenge the California Coastal Commission's permit condition for the remodel of their beachside residence. The condition requires construction be set back five feet from the seaward property line. The Greenes argue the Commission erred in finding that a five-foot buffer was needed to safeguard the public's access to the beach and associated walkway. The Greenes also contend the five-foot setback requirement constituted an unconstitutional taking of their property. We disagree and affirm the trial court's denial of the Greenes' petition for writ of administrative mandate.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

In 2015, the Greenes hired an architect to design the remodel of their beachfront property. The architect developed plans to add 1,190 square feet to their 2,410-square-foot duplex. The existing residence was set back from the seaward property line by 15 feet. The proposed construction would extend the residence to 1.5 feet from the seaward property line on the ground level; the second level would be built up to the property line with no setback.

The property abutted "Ocean Front Walk," the designated location for the City of Los Angeles's public walkway on the beach. Construction of the concrete walkway was happening "intermittent[ly]"—the City's practice was to require applicants for new residences to construct the portion of the path located seaward of any residential property, or pay an "in-lieu fee" to the City for future development of the walkway. In the Greenes'

---

[1] As this appeal concerns only the setback we do not address the other conditions placed on the permit or the Greenes' challenges to those conditions in the trial court.

2

case, the City did not require them to construct part of the walkway because the proposed project was an addition to an existing structure, not a new residence.

On June 28, 2016, the City approved a permit for the Greenes' proposed remodel. Because the property is in a dual permit jurisdiction, the Greenes also had to obtain approval from the Commission. In August 2016, the Greenes filed an application for a coastal development permit with the Commission seeking approval for the remodel.

On February 23, 2017, the Commission published a staff report recommending approval of the Greenes' permit application with several conditions including a five-foot setback from the seaward property line. The report found that public access concerns justified the imposition of the setback condition. According to the Commission staff, the City had historically prioritized setbacks for new developments abutting residential properties and deprioritized setbacks for new developments abutting public lands. The Commission staff found that some residences were built so close to the seaward property line that the public area appears to be private. The staff found that a 1.5-foot buffer would not allow adequate space on the Greenes' property for normal maintenance, such as painting or repairs, absent encroachment on public land. The staff further found that where there were inadequate setbacks, beachfront homeowners tended to use designated public areas as their backyard. The report concluded:

> "the provision of a 5 foot setback from the rear (seaward) property line should be considered the minimum setback necessary to allow for normal repair and maintenance activities of the residence on site to occur on the applicants'

3

property without requiring encroachment into public beach and Ocean Front Walk areas, provide for a minimum privacy buffer, avoid the appearance of privatization of the area designated for Ocean Front Walk, and minimize potential conflicts between property owners and members of the public using Ocean Front Walk.  [¶]  Therefore, the development, as conditioned, is consistent with the public access and recreation policies of Chapter 3 of the Coastal Act."[2]

In a separate section of the report, the Commission staff expressed concern about future rises of sea level as another basis to support the imposition of the five-foot setback:

"[T]he proposed development is located in an area where coastal hazards exist that could adversely impact the development, and due to sea level rise, the Commission imposes [the condition] which requires that the proposed development have at least a 5-foot rear (seaward side) setback . . . ."

On March 9, 2017, following the receipt of the staff recommendation, the Commission held a hearing on the application.  Multiple commissioners raised concerns about the setback condition and one commissioner moved to remove it from the permit.  The motion failed, and the Commission then unanimously approved the permit as recommended in the staff report.  The commissioners did not specify at the time of the vote which findings they had adopted from the staff report.

---

[2]      Chapter 3 of the California Coastal Act of 1976 is comprised of sections 30200 to 30265.5 of the Public Resources Code.

4

On May 5, 2017, the Greenes filed a petition for writ of administrative mandate and a complaint for declaratory and injunctive relief seeking to invalidate the five-foot setback condition. The Greenes argued the setback constituted an unconstitutional taking. The Greenes also asserted that the Commission had abused its discretion because there was no substantial evidence the remodel would "adversely affect public access and recreation."

The trial court denied the petition concluding (1) as to the unconstitutional taking claim, the Greenes had not exhausted their administrative remedies on the point because they had not argued before the Commission that the setback condition resulted in a taking, (2) the condition did not, in any case, result in a taking, and (3) substantial evidence supported the Commission's findings that a setback of less than five feet would effectively privatize the beach seaward of the property, necessitate intrusion into the public right-of-way for routine repairs, and create conflicts between the Greenes and the public. The court found that the Commission's other stated rationale for imposing the setback condition—the risk of sea level rise—was not supported by substantial evidence because it was premised on " 'generalized speculation.' "

The Greenes timely appealed.

### DISCUSSION

1. *The California Coastal Act*

The Coastal Act (Pub. Resources Code, § 30000 et seq.)[3] " 'was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of

---

[3] All further statutory references are to the Public Resources Code unless otherwise stated.

5

California.' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793 (*Pacific*).) "The Coastal Act requires a person wishing to undertake development in the coastal zone to obtain a coastal development permit. (§ 30600, subd. (a).) Prior to certification of a local coastal program, and absent a local government procedure for issuing coastal development permits, the Commission or local government shall issue coastal development permits. (§ 30600, subd. (c).)" (*Douda v. California Coastal Com.* (2008) 159 Cal.App.4th 1181, 1188 (*Douda*).) "[I]n certain areas, sometimes referred to as dual permit jurisdictions, an applicant must obtain a permit from the local entity and after obtaining the local permit, a second permit from the commission. (Pub. Resources Code, §§ 30600, 30601; Cal. Code Regs., tit. 14, § 13301, subd. (a).)" (*Pacific, supra*, 55 Cal.4th at p. 794.)

A "coastal development permit shall be issued if the issuing agency, or the commission on appeal, finds that the proposed development is in conformity with the [provisions of] [c]hapter 3" of the Coastal Act. (*Douda, supra*, 159 Cal.App.4th at pp. 1188–1189.) Chapter 3 sets forth policies that protect public coastal access, recreational uses, and marine biological resources, among other things. (§§ 30210–30214.) These policies "constitute the standards by which . . . the permissibility of proposed developments subject to the provisions of this division are determined." (§ 30200, subd. (a).)

The Coastal Act directs the Commission to maximize the public's access to and along the coast consistent with the rights of private property owners. (§§ 30001.5, subd. (c), 30210.) Chapter 3's policies protect such public access by, among other things, precluding development from interfering with such use

6

(§§ 30211, 30212) and protecting oceanfront land suitable for recreational use (§ 30221).  Chapter 3 also requires the Commission to minimize potential conflicts between the public and beachfront property owners (§ 30214, subd. (b)).  The Commission must resolve potential conflicts between Chapter 3 policies in a way that, on balance, is most protective of significant coastal resources (§ 30007.5).  The Coastal Act also requires the Commission to consider a proposed project's cumulative effects in light of other present, past, and probable future developments. (§ 30105.5; *Stanson v. San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38, 47–48.)

**2.     *Standard of Review***

The Coastal Act provides for judicial review of a Commission decision by administrative mandate action under Code of Civil Procedure section 1094.5.  (§ 30801.)  Section 1094.5 requires the trial court to determine whether substantial evidence supports the Commission's decision.  (Code Civ. Proc., § 1094.5, subd. (c).)  In reviewing the Commission's permit decisions, the Court of Appeal applies the same standard of review as the trial court.  (*La Costa Beach Homeowners' Assn. v. California Coastal Com.* (2002) 101 Cal.App.4th 804, 814–815 (*La Costa*).)[4]

The administrative agency's decision must be based on the evidence presented at the hearing.  (*Board of Medical Quality Assur. v. Superior Court* (1977) 73 Cal.App.3d 860, 862.)  The

---

[4]     The parties quarrel with whether this court should give deference to the Commission's interpretation of the Coastal Act and resulting regulations.  We need not resolve this dispute as we conclude this appeal does not present issues of Commission statutory or regulatory interpretation.

administrative agency is only required to issue findings that give enough explanation so that parties may determine whether, and upon what basis, to seek review of the decision. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514–515.) "Unless otherwise specified at the time of the vote, an action taken consistent with the staff recommendation shall be deemed to have been taken on the basis of, and to have adopted, the reasons, findings and conclusions set forth in the staff report . . . ." (Cal. Code Regs., tit. 14, § 13096.) It is not necessary that every finding be supported by substantial evidence, as long as the findings that are supported by substantial evidence are sufficient to support the decision of the Commission. (S*aad v. City of Berkeley* (1994) 24 Cal.App.4th 1206, 1213–1214; *Reddell v. California Coastal Com.* (2009) 180 Cal.App.4th 956, 967.)

A petitioner challenging the administrative decision bears the burden of demonstrating error. (*Ross v. California Coastal Com.* (2011) 199 Cal.App.4th 900, 921.) "Courts may reverse an agency's decision only if, *based on the evidence before the agency*, a reasonable person could not reach the conclusion reached by the agency." (*La Costa, supra*, 101 Cal.App.4th at p. 814.)

**3.**     ***Substantial Evidence Supports the Commission's Determination that the Remodel Would Have an Adverse Impact on the Public's Access to the Beach***

The Greenes first challenge the Commission's finding that the proposed construction would effectively privatize the beach in violation of the Coastal Act's public access policies. They argue this finding is not supported by substantial evidence because there was no evidence the remodel would interfere with the public's access to the beach. We disagree.

8

The Greenes cloak their point with the claim that it is speculative for the Commission to find that the Ocean Front Walk would be completed at all. If there will be no walkway, then the remodel's 1.5-foot setback on the ground floor and lack of a setback on the second floor could not possibly interfere with a walkway. The Greenes ignore evidence the City had consistently required all development of beachfront property along the designated location for this walkway to include construction of part of the walkway or pay an in-lieu fee. This was substantial evidence that the walkway would continue to be built, albeit slowly.

The Commission's finding that less than a five-foot setback from the walkway would effectively privatize public land was based in part on anticipated conflicts with the public's use of the beach set aside for the walkway. The Commission found that the minimal 1.5-foot setback proposed by the Greenes would (1) not permit maintenance—such as painting and repair—of the property without intrusion into the walkway, (2) would deceive the public into believing that some of the public land belonged to the Greenes, and (3) could result in privacy complaints from the Greenes or future homeowners at the property when the public walks within 1.5 feet of their residence.

The Greenes argue that the remodel *cannot* interfere with the public's access to the beach because the construction would not physically intrude onto public property. However, the Commission could reasonably infer from the fact that the remodel's second floor was flush with the property line, and the first floor was only 1.5 feet away, that routine maintenance such as painting *would* physically intrude into the designated location for the walkway. It was also reasonable for the Commission to

9

find that, based on the close proximity of the remodel to the property line, the remodel would give the appearance that the immediate vicinity of the seaward-facing side of the duplex was private when, in fact, it is public land whether designated for the Ocean Front Walk or not. This perception would lead to less public use of part of the beach. Lastly, the Commission staff report cited to past permit actions in other coastal locations where property owners objected to having public walkways in close proximity to their residences because of privacy concerns. The Greenes contest the relevancy of what happened in other places along the coast. In our view, that charge might go to the weight afforded this information, but it nevertheless is an element of the sufficiency of the evidence.

In sum, these findings, considered in light of the Coastal Act policies of maximized public access and recreation, are supported by substantial evidence.

The Greenes further object to "false statements in the staff report," namely that the "normally required rear yard setback for a structure on the subject site is 15 feet." The Greenes argue this was false because the applicable local ordinance only requires a setback of one foot. However, as the trial court observed, "the [staff] report clearly explains that the City [not the Commission] normally requires a 15-foot rear setback for beachfront properties, but for properties at this location <u>an ordinance permits a one-foot setback</u>." Even considered as a misstatement of fact, there is nothing to suggest this information was a significant factor in the Commission's decision, nor does it undermine the sufficiency of the evidence.

Lastly, the Greenes contend that, even if the Commission's privatization findings are supported by substantial evidence, we

10

must still vacate the decision because the "Commission failed to issue findings to bridge the analytic gap between the staff's findings and its decision."  (See *Topanga Assn. for a Scenic Community v. County of Los Angeles, supra*, 11 Cal.3d at p. 520 [decision approving zoning variance lacked findings bridging the analytic gap between the evidence and decision].)  The Greenes point to comments by three commissioners at the hearing that the five-foot setback was justified due to concerns about sea level rise.  The trial court later found that substantial evidence did not support a finding that a flood risk justified the setback condition.

Because the Commission "did not clearly state its findings" when it adopted the permit, the Greenes argue that its decision could have improperly been based on the sea level rise justification as opposed to the privatization of the beach finding.  This is not a failure to bridge the analytic gap between the evidence and decision, however.  As we explain, the privatization finding was adopted by the Commission, is supported by the evidence, and justifies the permit decision, wholly aside from the sea level rise finding debunked by the trial court.

The Greenes acknowledge that the Commission is not required to issue formal findings of fact, and we must presume that "[u]nless otherwise specified at the time of the vote, an action taken consistent with the staff recommendation shall be deemed . . . to have adopted, the reasons, findings and conclusions set forth in the staff report . . . ."  (Cal. Code Regs., tit. 14, § 13096.)  The commissioners who made comments about the sea level rise justification did so at the time they voted on the motion to remove the setback condition from the permit.  After the motion was denied, the commissioners voted unanimously to approve the permit with the setback condition.  No reasons,

11

findings or conclusions were specified at the time of the vote on the permit. We therefore by law must deem the Commission to have adopted those findings in the staff report, including the finding that a setback less than five feet would effectively privatize part of the beach. Substantial evidence supports the privatization finding, and this finding is sufficient to support the Commission's decision. (See *Sinaiko v. Superior Court* (2004) 122 Cal.App.4th 1133, 1145–146.)

4.      ***The Greenes Did Not Exhaust Their Administrative Remedies on their Unconstitutional Taking Argument***

The Greenes contend the five-foot setback condition is an unconstitutional taking of their property for public use without just compensation. The trial court rejected this argument because the Greenes had failed to raise the point at the Commission hearing. We agree.

"Where an administrative remedy is provided by statute, this remedy must be exhausted before the courts will act. [Citations.] This ' "is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of stare decisis, and binding upon all courts." [Citations.]' [Citation.] The rationale for the rule is that an agency is entitled to learn the contentions of interested parties before litigation arises, so it will have an opportunity to address the contentions and perhaps render litigation unnecessary. [Citation.] To advance this purpose an interested party must present the exact issue to the administrative agency that is later asserted during litigation or on appeal. [Citation.] General objections, generalized references or unelaborated comments will not suffice. [Citation.] ' "[T]he objections must be sufficiently specific so that the agency has the opportunity to evaluate and

12

respond to them." [Citation.]' [Citation.] [¶] 'The petitioner bears the burden of demonstrating that the issues raised in the judicial proceeding were first raised at the administrative level. [Citation.]' [Citation.]" (*Hagopian v. State of California* (2014) 223 Cal.App.4th 349, 371, italics omitted.)

The Greenes argue they did raise the point through general objections at the hearing.[5] The Greenes point to their representative's statements that "[t]he city council took the *legislative action to establish a specific setback of one foot*," and "the project will not conflict with any public access or public recreations policies of the [C]oastal [A]ct." They argue that although their consultant did not refer to the federal or state constitutions, case law or other authority on the takings issue, he "articulated the principles of those decisions."

These general arguments did not put the Commission on notice of a taking issue. To satisfy the exhaustion requirement, the Greenes were required to present the " 'exact issue' " to the administrative agency. (*Mani Brothers Real Estate Group v. City of Los Angeles* (2007) 153 Cal.App.4th 1385, 1394.) Here, the Greenes' representative's entire presentation at the hearing concerned the Commission's historic reliance on the City's zoning to approve a one-foot setback on similar properties. This argument did not reference an unconstitutional taking, and did not give the Commission an opportunity to evaluate that issue. Accordingly, the Greenes have not exhausted their

---

[5] The Greenes also contend that the consultant representing them at the administrative hearing was not a lawyer and, therefore, should not have been expected to make legal arguments. We do not address the substance of this argument but note that the Greenes' attorney on appeal, David R. Greene, was also present at the hearing on behalf of the Greenes.

administrative remedies for their claim that the five-foot setback constituted an unconstitutional taking.

## *DISPOSITION*

The judgment denying the petition is affirmed.  Appellants are ordered to pay for respondent's costs on appeal.


RUBIN, P. J.


WE CONCUR:



BAKER, J.



MOOR, J.