Filed 6/30/21  Patane v. County of Santa Clara CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CARMEN PATANE, | H048133 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 19-CV347111) |
| v. | |
| COUNTY OF SANTA CLARA et al., | |
| Defendants and Respondents; | |
| SHAMROCK SEEDS COMPANY, | |
| Real Party in Interest and Respondent. | |

## I.    INTRODUCTION

This CEQA[1] action arises from the proposal of real party in interest Shamrock Seeds Company (Shamrock Seeds) to expand and modernize its agricultural research facility in unincorporated Santa Clara County (County) by, among other things, building new greenhouses.  After preparing an environmental impact report (EIR) pursuant to CEQA concerning the proposed project and holding a hearing, the County's Board of Supervisors approved the Shamrock Seeds project.

Plaintiff Carmen Patane, a neighboring property owner, challenged the County's approval of the Shamrock Seeds project by filing a petition for writ of mandate alleging

---

[1] California Environmental Quality Act, Public Resources Code section 21000 et seq.

violations of CEQA's requirements for environmental review with respect to aesthetics and historical resources. The trial court denied the petition for writ of mandate and on May 4, 2020, judgment was entered in favor of respondents.

On appeal, Patane contends that the trial court erred in denying the petition for writ of mandate because (1) the EIR's conclusions regarding the aesthetic impact of light emitted from the proposed greenhouses during non-daylight hours, specifically sky glow on cloudy skies, are not supported by substantial evidence; (2) the EIR's mitigation measures for greenhouse lighting are inadequate; and (3) the County's response to comments by Patane's lighting expert are inadequate.

For reasons that we will explain, we find no merit in Patane's contentions. We will therefore affirm the judgment.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      *The Proposed Project and Environmental Impact Report*

The proposed Shamrock Seeds project is located on Holsclaw Road in a rural area of unincorporated Santa Clara County where Shamrock Seeds has an existing agricultural research facility. The proposed project would expand and modernize the research facility by demolishing the existing greenhouses and constructing two new greenhouses, an agricultural research building, a parking lot, an electrical utility building, a water tank, and a stormwater detention pond. The new greenhouses would have internal illumination during a portion of non-daylight hours.

The draft environmental impact report (DEIR) for the Shamrock Seeds project was released in October 2018. The many environmental impacts addressed in the DEIR include the project's impacts on aesthetics and historical resources. The DEIR's conclusions regarding the aesthetic impact of light and glare from the proposed new greenhouses were based on a lighting analysis conducted for the proposed project, as set forth in the June 2018 lighting technical memorandum prepared by Neil Hinckley of Michael Baker International and included with the DEIR as Appendix B.

2

As summarized in the DEIR, Hinckley's lighting analysis began by taking baseline measurements of light levels from the existing greenhouses in order to compare existing conditions to the modeling of the light levels from the proposed greenhouses. Hinckley then analyzed the impact of horizontal illumination, vertical illumination, uplight and sky glow, and glare from the proposed greenhouses.

Regarding horizontal illumination from the proposed new greenhouses, Hinckley determined that "the light emanating from the proposed greenhouses would result in a maximum horizontal illumination of 0.3 fc[2] at the nearest property line, which would fall to 0.1 fc at 10 feet beyond the northwest property line on the adjacent property at 6650 Holsclaw Road. Thus, horizontal illumination would not exceed the 0.1 fc threshold 10 feet beyond a property line and the impact would be less than significant."

Hinckley also determined that the impact of uplight and sky glow from the proposed greenhouses would be less than significant: "[T]he sky brightness due to the proposed greenhouses would be well below the 0.1x threshold (10 percent increase) both at the property edge (2.2 percent change) and at a distance of five kilometers from the property boundary (no change). This increase in sky brightness would not be noticeable as it typically takes an eight percent difference (increase or decrease) in brightness to be noticeable to humans. The sky glow of nearby cities is significantly brighter than the sky glow that would result from the new greenhouses."

Regarding the impact of sky glow from greenhouse lighting on cloudy skies, Hinckley stated that "[a]s part of the lighting analysis in Appendix B, a calculation grid was placed at cloud level (6,000 feet), facing down, and used to calculate what the

---

[2] "Footcandles are the most common unit of measure used by lighting professionals to calculate light levels in businesses and outdoor spaces. A footcandle [fc] is defined as the illuminance on a one square foot surface from a uniform source of light."
(<https://www.lightingdesignlab.com/sites/default/files/pdf/Footcandle_Lighting%20Guide_Rev.072013.pdf> [as of Jun. 29, 2021], archived at <https://perma.cc/FEJ6-PXTS>.)

illuminance on the clouds would be.  The maximum illuminance value at cloud level was approximately 0.03 fc."  Hinckley determined that that the impact of sky glow on cloudy skies would be less than the .10 fc threshold of significance.

Regarding the impact of glare from the proposed greenhouses, Hinckley concluded that "glare from the proposed project would be unnoticeable on average to barely discernible in the worst case.  As a result, glare from the project would not exceed the 20 GR threshold ('barely noticeable') and the impact would be less than significant."

However, Hinckley determined that the impact of vertical illumination from the proposed greenhouses would be significant, because "[v]ertical illumination from the proposed project greenhouses would exceed the 0.1 fc threshold by 79 times as measured 10 feet from the northwest property line on the adjacent property in the vertical plane."  Hinckley further determined that there were mitigation measures that would reduce the impact of vertical illumination to a less than significant level.

The mitigation measures recommended by Hinckley, designated MM AES-1.1, were as follows:  "One or more solid barriers shall be installed within four feet of each of the proposed lighted greenhouses along the northwest side to reduce the vertical illuminance at the northwest property line to levels below those specified in the 2011 Model Lighting Ordinance from the International Dark Sky Association/Illuminating Engineering Society (0.1 fc measured 10 feet from the property line on the adjacent property).  Such barrier(s) shall have an aggregate opacity of at least 80 percent and be at least as tall as the sidewalls of the proposed lighted greenhouses along their northwest side."  Hinckley concluded that "[i]mplementation of MM AES-1.1 would reduce vertical illumination on the adjacent property at 6650 Holsclaw Road by approximately 80 percent (reducing it to below the 0.1 fc threshold) and the resulting lighting impact would be less than significant."

The DEIR also concluded that the Shamrock Seeds project would have a less than significant impact to historical resources, including the adjacent Edwin Willson Ranch.

**B.** *The County's Approval of the Shamrock Seeds Project*

The County released the final EIR (FEIR) in February 2019 after the public review period closed. The FEIR included the DEIR, public comments, and the County's responses to comments.

The County's Board of Supervisors held a public hearing on the Shamrock Seeds project on February 26, 2019. The Board of Supervisors thereafter adopted resolution No. BOS-2019-35 certifying the EIR (the combined DEIR and FEIR) and approving the Shamrock Seeds project. Additionally, as stated in the conditions of approval attached to resolution No. BOS-2019-35, the Board of Supervisors approved the greenhouse lighting plan evaluated in the EIR, conditioned upon implementing mitigation measure MM AES-1.1 to reduce vertical illumination from the proposed greenhouses.

The Board of Supervisors also addressed, in resolution No. BOS-2019-35, Patane's public comments regarding greenhouse lighting. Patane submitted comments along with a report by Patane's lighting expert, Benya Burnett Consultancy (Benya), which disagreed with Hinckley's lighting analysis in the DEIR and concluded that the Shamrock Seeds project violated CEQA with respect to greenhouse lighting. Specifically, Benya stated that " '[t]his Project will cause significant light and glare adversely affecting nighttime views of the area that can only be mitigated by the nightly use of a total black-out shading system completely enclosing every window or skylight on each greenhouse that uses interior electric lighting at night.' "

The Board of Supervisors also noted Patane's additional comment "that the Project would cause a significant spillover of light from the parking lot and from lighted greenhouses, resulting in an impact to [Patane's] property." The Board of Supervisors responded that a qualified technical consultant, Michael Baker International, had prepared a comprehensive lighting analysis that determined the only significant impact from the proposed greenhouses was vertical illumination, which would be reduced to a less than significant level by mitigation measure MM AES-1.1.

5

Further, the Board of Supervisors stated in resolution BOS-2019-35 that Patane had "submitted additional information to the County on February 25, 2019, including a response to the FEIR from a lighting consultant, a letter from an attorney regarding the adequacy of the EIR, a memorandum on the feasibility of internal blackout curtains, and photos of the project site relating to neighborhood character and the impacts of the project. A supplemental memorandum prepared by the County's lighting consultant, Michael Baker International, dated April 2, 2019, which is attached to this resolution as [e]xhibit 3, explains why the February 25, 2019 comments from Benya Burnett Consultancy do not require any changes to the findings, mitigation measures, or conditions related to the Project."

## C. *Writ Proceedings*

Patane filed a verified petition for a writ of mandate setting aside the County's approval of the Shamrock Seeds project. The petition named the County and the Board of Supervisors as respondents, and Shamrock Seeds as the real party in interest carrying out the project. Patane was identified as a resident of property on Holsclaw Road that is adjacent to the project location.

In the writ petition, Patane raised claims of CEQA violations with regard to the EIR's analysis of the impact of the Shamrock Seeds project on aesthetics and historical resources. As to aesthetics, Patane alleged that "[t]he Final EIR failed to adequately disclose and discuss the Project's impacts to aesthetics as a result of the night lighting for the greenhouses. Additionally, the record demonstrates that the Project will result in significant impacts associated with the lighting of the greenhouses and the Final EIR failed to provide adequate and proper mitigation of those impacts. As part of the Final EIR's failure to address lighting and glare impacts, the EIR fails to adequately disclose, discuss and mitigate the Project's impacts associated with sky glow." Patane also asserted that the EIR had failed to adequately address and mitigate the project's impact on historic resources, specifically the Edwin Willson Ranch.

6

After a court trial, the trial court issued its March 12, 2020 order denying the petition for writ of mandate. The court determined that Patane had failed to meet the burden, as the petitioner, to show that the EIR's findings regarding the potential impacts on aesthetics were not supported by substantial evidence, since the DEIR included the lighting analysis by Michael Baker International and the FEIR included responses to Patane's comments, which qualified as reasonable assumptions and expert opinion based on facts.

The court also determined that Patane's "arguments on the aesthetics issue ultimately present a disagreement between experts as to methodology and proper measurement techniques rather than establishing a lack of substantial evidence for the EIR's conclusions. Having prepared an EIR, the County was allowed 'to weigh the evidence relating to the accuracy and sufficiency of the information in the EIR to decide whether to accept it. The agency may defer to the environmental conclusions reached by the experts that prepared the EIR even though others may disagree with the underlying data, analysis, or conclusions.' [Citations.]"

The trial court also rejected Patane's historical resources CEQA claim, finding the EIR's conclusion of no significant impact on historical resources was supported by substantial evidence. Judgment in respondents' favor was filed on May 4, 2020.

III. DISCUSSION

On appeal, we understand Patane to contend that (1) the EIR's conclusions regarding the aesthetic impact of light emitted from the proposed greenhouses during non-daylight hours, specifically sky glow on cloudy skies, are not supported by substantial evidence; (2) the EIR's mitigation measures for greenhouse lighting are inadequate; and (3) the County's response to comments by Benya, Patane's lighting expert, are inadequate. Patane does not raise any issues on appeal regarding the impact on historical resources.

7

We will begin our evaluation of Patane's contentions with the principles that guide our review of CEQA issues.

## A.     *Overview of CEQA Principles*

The California Supreme Court has summarized the CEQA principles that govern our review:  " 'The foremost principle under CEQA is that the Legislature intended the act "to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." ' [Citations.]  'With narrow exceptions, CEQA requires an EIR whenever a public agency proposes to approve or to carry out a project that may have a significant effect on the environment. [Citations.]' [Citation]; see Guidelines, § 15002, subd. (f).)[3]  The basic purpose of an EIR is to 'provide public agencies and the public in general with detailed information about the effect [that] a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project.' (Pub. Resources Code, § 21061; see Guidelines, § 15003, subds. (b)-(e).)  'Because the EIR must be certified or rejected by public officials, it is a document of accountability.  If CEQA is scrupulously followed, the public will know the basis on which its responsible officials either approve or reject environmentally significant action, and the public, being duly informed, can respond accordingly to action with which it disagrees.' [Citation.]  The EIR 'protects not only the environment but also informed self-government.' [Citation.]" (*Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 511-512, fn. omitted (*Sierra Club*).)

Thus, "[a]s this court has observed, 'the overriding purpose of CEQA is to ensure that agencies regulating activities that may affect the quality of the environment give

_____

[3] "The regulations that guide the application of CEQA are set forth in title 14 of the California Code of Regulations and are often referred to as the CEQA Guidelines. [Citation.]" (*Pfeiffer v. City of Sunnyvale City Council* (2011) 200 Cal.App.4th 1552, 1561, fn. 5; hereafter CEQA Guidelines or Guidelines.)

primary consideration to preventing environmental damage.  [Citation.]'  [Citation.]"
(*Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141
Cal.App.4th 677, 687.)

**B.      *Standard of Review***

"In a CEQA case, the appellate court's review 'is the same as the trial court's:
[It] reviews the agency's action, not the trial court's decision; in that sense appellate
judicial review under CEQA is de novo.'  [Citation.]"  (*Protecting Our Water and
Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 495 (*Protecting
Our Water*).)

Accordingly, "[t]he reviewing court independently determines whether the record
'demonstrates any legal error' by the agency and deferentially considers whether the
record 'contains substantial evidence to support [the agency's] factual determinations.'
[Citation.]"  (*Protecting Our Water*, *supra*, 10 Cal.5th at p. 495.)  " 'Substantial evidence
challenges are resolved much as substantial evidence claims in any other setting:  a
reviewing court will resolve reasonable doubts in favor of the administrative decision,
and will not set aside an agency's determination on the ground that the opposite
conclusion would have been equally or more reasonable.  [Citations.]' "  (*Sierra Club*,
*supra*, 6 Cal.5th at p. 515.)  "If the agency's determination 'involves pure questions of
law, we review those questions de novo.'  [Citation.]"  (*Protecting Our Water*, *supra*, at
p. 495.)

" 'Where an EIR is challenged as being legally inadequate, a court presumes a
public agency's decision to certify the EIR is correct, thereby imposing on a party
challenging it the burden of establishing otherwise.'  [Citation.]"  (*California Native
Plant Society v. City of Santa Cruz* (2009) 177 Cal.App.4th 957, 987.)

**C.      *Aesthetic Impact under CEQA***

Public Resources Code section 21001, subdivision (b) provides in part that "[t]he
Legislature further finds and declares that it is the policy of the state to:  [¶] . . . [¶]  Take

9

all action necessary to provide the people of this state with . . . enjoyment of *aesthetic*, natural, scenic, and historic environmental qualities[.]" (Italics added.) Accordingly, it has been recognized that "aesthetic issues are properly studied under CEQA . . . ." (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 577; see also *Protect Niles v. City of Fremont* (2018) 25 Cal.App.5th 1129, 1141 [CEQA defines " ' "environment" ' to include 'objects of historic or aesthetic significance' "].)

Consideration of aesthetic issues under CEQA includes the environmental impact of light and glare caused by a project. (See, e.g., *Taxpayers for Accountable School Bond Spending v. San Diego Unified School Dist.* (2013) 215 Cal.App.4th 1013, 1038 [no substantial evidence that lighting for football stadium might have a significant impact on environment due to glare or sky glow].) Appendix G to the CEQA Guidelines provides an environmental impact checklist that requires the lead agency to consider whether the proposed project would " '[c]reate a new source of substantial light or glare which would adversely affect day or nighttime views in the area[.]' [Citation.]" (*Ocean View Estates Homeowners Assn., Inc. v. Montecito Water Dist.* (2004) 116 Cal.App.4th 396, 401.)

**D.** *Analysis*

**1.** *Impact of Sky Glow on Cloudy Skies*

Patane argues that the EIR's conclusion that the light emitted from the proposed greenhouses will cause a less than significant aesthetic impact from sky glow on cloudy skies is not supported by substantial evidence. The basis for Patane's argument is the opinion of Benya, Patane's lighting expert, that the County's lighting expert, Hinckley, improperly relied on a model for calculating the impact of manmade sky glow developed by Dr. Roy Garstang (the AGI32 model) that does not address cloudy night skies because the model was designed to assess the impact of sky glow on astronomy.

The County responds that its expert, Hinckley, used a calculation grid to determine that the amount of greenhouse illumination at typical cloud height would not exceed the

10

threshold of significance, and therefore the EIR's conclusions regarding sky glow are supported by substantial evidence. The County also argues that the disagreement between the parties' experts with regard to the impact of sky glow does not render the EIR inadequate due to lack of substantial evidence. We agree.

Under CEQA, " 'substantial evidence' is 'enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached. . . . Argument, speculation, unsubstantiated opinion or narrative, evidence which is clearly erroneous or inaccurate . . . does not constitute substantial evidence.' (Guidelines, § 15384, subd. (a).)" (*Gilroy Citizens for Responsible Planning v. City of Gilroy* (2006) 140 Cal.App.4th 911, 918.) " 'Substantial evidence shall include facts, reasonable assumptions predicated upon facts, and expert opinion supported by facts.' (Guidelines, § 15384, subds. (a) & (b).)" (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 540.)

Here, Patane asserts that the EIR's conclusion regarding the impact of sky glow is not supported by substantial evidence because that "Mr. Hinckley made approximate calculations using the wrong model, looked at the Project and Project location and then offered his opinion that the impacts [on sky glow on cloudy skies] were not significant based upon his experience and expertise." According to Patane, Benya correctly determined that the impact of sky glow on cloudy skies should be measured by other methods that would show a significant impact, including "readings from an adjacent site [that] could be used and scaled relative to the size of the greenhouse and amount of light, and measurements taken on the ground in a grid about the size of the Shamrock Seeds facility and its neighbors."

We need not determine whether Hinckley used the correct methodology to assess the impact of sky glow on cloudy skies and reached a valid conclusion. " 'The court does *not* have the duty of passing on the validity of the conclusions expressed in the EIR, but

11

only on the sufficiency of the report as an informative document.'  [Citation.]  It is also well established that '[disagreement] among experts does not make an EIR inadequate.' [Citation.]"  (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 409 (*Laurel Heights*).)

Regarding expert disagreement in CEQA cases, the decision in *Chico Advocates for a Responsible Economy v. City of Chico* (2019) 40 Cal.App.5th 839 (*Chico Advocates*) is instructive.  In that case, the EIR analyzed a proposal to expand an existing Walmart store and concluded that the potential economic impacts of the expansion would not be sufficient to cause urban decay.  (*Id.* at p. 844)  On appeal, the project opponents argued that there were flaws in the methodology and underlying data used in the EIR's urban decay analysis.  (*Id.* at p. 851.)

The appellate court in *Chico Advocates* determined that the project opponents' arguments failed to show that the EIR's urban decay analysis was not supported by substantial evidence.  (*Chico Advocates*, *supra*, 40 Cal.App.5th at p. 852.)  The court stated that "challenges to the scope of an EIR's analysis, the methodology used, or the reliability or accuracy of the data underlying an analysis, must be rejected unless the agency's reasons for proceeding as it did are clearly inadequate or unsupported. [Citation.]  The issue for us is ' "not whether the studies are irrefutable or whether they could have been better.  The relevant issue is only whether the studies are sufficiently credible to be considered *as part of* the total evidence that supports the [agency's] finding[s] . . . . "  [Citation.]'  [Citation.]"  (*Id.* at p. 851.)

The *Chico Advocates* court concluded that "we are not persuaded that the City's approach renders the analysis clearly inadequate or unsupported.  The identified 'flaws' with the EIR's methodology amount to nothing more than differences of opinion about how the Project's expected grocery sales should be estimated, how the Project's market area should be defined, and which competitors are most susceptible to impacts from the Project.  The choice of one approach over the other does not render the City's EIR

12

unreliable." (*Chico Advocates*, *supra*, 40 Cal.App.5th at p. 851-852; see also *Save Cuyama Valley v. County of Santa Barbara* (2013) 213 Cal.App.4th 1059, 1069 [the substantiality of evidence is not undermined by the parties' differing expert opinions]; (*Association of Irritated Residents v. County of Madera* (2003) 107 Cal.App.4th 1383, 1397 (*Irritated Residents*) ["When the evidence on an issue conflicts, the decisionmaker is 'permitted to give more weight to some of the evidence and to favor the opinions and estimates of some of the experts over the others' "].)

We reach a similar result in the present case. The parties' lighting experts have different opinions as to the methodology and the underlying data that should be used to calculate the aesthetic impact of the sky glow emitted from the proposed greenhouses on cloudy skies. The County was permitted to favor the opinions and estimates of its lighting expert over Patane's expert. (See *Irritated Residents*, *supra,* 107 Cal.App.4th at p. 1397.) Accordingly, we determine that Patane has not met the burden to show that the EIR's conclusion—that the impact of sky glow on cloudy skies from the Shamrock Seeds greenhouse project will be less than significant—is not supported by substantial evidence.

### 2. *Mitigation*

Patane generally contends that the EIR does not contain mitigation measures that are adequate for the prevention of light pollution on neighboring properties and sky glow. More specifically, Patane contends that solid barrier mitigation measure MM AES-1.1 does not adequately mitigate the impact of the night lighting of the proposed greenhouses. Patane also asserts that the EIR fails to address the feasibility of black out curtains as a mitigation measure, as recommended by Benya, Patane's lighting expert, to prevent sky glow and other light pollution. Additionally, Patane argues that the ordinances of other jurisdictions regulating greenhouse lighting show that many counties "require minimizing the emission of artificial night-time light in order to mitigate the impacts from the artificial night-time light."

13

The County responds that black out curtains are not a feasible mitigation measure because, as stated by a representative of Shamrock Seeds, black out curtains are not used in the vegetable seed industry due to curtains holding seed contaminants such as fungus, mold, and pollen. The County also emphasizes that its expert, Hinckley, concluded that that the impact of nighttime light from the proposed greenhouses would be less than significant, with the exception of vertical illumination that would be mitigated to a less than significant impact by the solid barriers specified in mitigation measure MM AES-1.1. As to Patane's argument regarding the greenhouse ordinances of other jurisdictions, the County asserts that the EIR's "site-specific findings were not required to be consistent with general ordinances in other jurisdictions."

We are not convinced by Patane's arguments challenging the EIR's adequacy with respect to mitigation. To begin with, under the CEQA Guidelines "EIR's are to identify feasible mitigation measures for each significant impact. (Guidelines, §§ 15121, subd. (a), 15126.4, subd. (a).)" (*Clover Valley Foundation v. City of Rocklin* (2011) 197 Cal.App.4th 200, 244.) Therefore, "[m]tigation measures are not required for effects which are not found to be significant." (Guidelines, § 5126.4, subd. (a)(3).

The EIR found, based on Hinckley's expert opinion as stated in his technical memorandum, that the impact of horizontal illumination, uplight and sky glow, and glare from the proposed greenhouses would be less than significant. As a result, under the Guidelines the EIR was not required to include mitigation measures for those insignificant impacts. (Guidelines, § 5126.4, subd. (a)(3).)

However, Hinckley determined that although the impact of vertical illumination from the proposed greenhouses would be significant, the solid barriers specified in mitigation measure MM AES-1.1 would reduce the impact of vertical illumination to a less than significant level. The different opinion of Patane's expert—that the impact of nighttime light from the proposed greenhouses should be mitigated by black out curtains—does not render the EIR inadequate. The California Supreme Court has

14

instructed that "[a] court may not set aside an agency's approval of an EIR on the ground that an opposite conclusion would have been equally or more reasonable. [Citation.] A court's task is not to weigh conflicting evidence and determine who has the better argument when the dispute is whether adverse effects have been mitigated or could be better mitigated. We have neither the resources nor scientific expertise to engage in such analysis, even if the statutorily prescribed standard of review permitted us to do so." (*Laurel Heights*, *supra*, 47 Cal.3d at p. 393.)

Finally, we observe that Patane has not provided any authority for the proposition that the ordinances of other jurisdictions regulating greenhouse lighting are relevant with regard to the adequacy of an EIR's mitigation measures for a specific greenhouse project.

### 3. *Response to Comments*

Patane contends that the FEIR did not adequately address the comments made by Benya, Patane's lighting expert, that Patane submitted during the public review and comment period[4] on the DEIR and on February 25, 2019, the day before the Board of Supervisors held the public hearing on the Shamrock Seeds project and certified the FEIR. Patane also contends Hinckley's memorandum responding to Benya's February 25, 2019 comments was improperly attached as [e]xhibit 3 to resolution No. BOS-2019-35 and not to the FEIR.

According to the County, the FEIR included a thorough summary of and responses to Benya's comments on the project's lighting impacts, and Hinckley's subsequent technical memorandum attached as exhibit 3 to resolution No. BOS-2019-35 responded to Benya's post-FEIR comments.

---

[4] "The review period must be at least 30 days, after which the lead agency must prepare written responses to the public comments and incorporate those responses and comments into an FEIR. (Pub. Resources Code, §§ 21091, subd. (d)(2), 21104, 21153; Guidelines, § 15088.)" (*Washoe Meadows Community v. Department of Parks & Recreation* (2017) 17 Cal.App.5th 277, 286.)

The California Supreme Court has instructed that " '[d]isagreement among experts does not make an EIR inadequate, but the EIR should summarize the main points of disagreement among the experts.' (Guidelines, § 15151.) '[M]ajor environmental issues raised when the lead agency's position is at variance with recommendations and objections raised in the comments must be addressed in detail.' (Guidelines, § 15088, subd. (c).)" (*Banning Ranch Conservancy v. City of Newport Beach* (2017) 2 Cal.5th 918, 940 (*Banning Ranch*).)

Having reviewed the EIR, we find that the EIR met the standard for an agency's response to expert comments. Beginning with comment E.7, the EIR provides a summary of Benya's opinions regarding CEQA aesthetic violations and the deficiencies in Hinckley's analysis of the proposed greenhouse lighting. Noting that the EIR's response to comment E.7 is an introductory response, the EIR goes on to further respond to Benya's comments E.11 through E.16 in detail, including a detailed summary of Benya's report (comment E.11), and detailed responses to each of Benya's comments, including the comments on sky glow (comment E.12), impact of lighting on birds (comment E.13), conflation of physics concepts (comment E.14), need for a blackout shading system (comment E.15), and a summary of Benya's conclusions (comment E.16). The EIR's responses to Benya's comments explained in detail the County's acceptance of Hinckley's expert lighting analysis rather than Benya's expert opinions and conclusions, thereby satisfying the requirement of Guideline section 15088, subdivision (c). (See *Banning Ranch*, *supra*, 2 Cal.5th at p. 940.)

Moreover, where, as here, the project opponent's comments on the EIR are submitted on the eve of the agency's public hearing, "CEQA does not require an agency to respond to comments that are received after close of the designated public review period. [Citations]; Guidelines, § 15207." (*Chico Advocates*, *supra*, 40 Cal.App.5th at pp. 851-852, fn. 9.) "Although the lead agency need not respond to late comments, the lead agency may choose to respond to them." (Guidelines, § 15207.)

16

In this case, the Board of Supervisors in resolution No. BOS-2019-35 chose to respond, stating that Patane had submitted comments by Benya on the FEIR on February 25, 2019, the day before the Board's February 26, 2019 public hearing on the Shamrock Seeds project. The Board of Supervisors responded by attaching a supplemental memorandum by Hinckley dated April 2, 2019, to resolution No. BOS-2019-35, which the Board relied on in stating that Benya's February 25, 2019 comments did not require any changes to "the findings, mitigation measures, or conditions related to the Project."

For these reasons, we determine that Patane has not met the burden to show that the EIR's response to expert comments was inadequate. Patane's reliance on the decision in *Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412 (*Vineyard*) for a contrary conclusion is misplaced.

In *Vineyard* our Supreme Court stated: " '[I]nformation "scattered here and there in EIR appendices" or a report "buried in an appendix," is not a substitute for "a good faith reasoned analysis . . . .' " [Citations.] To the extent the County [of Sacramento], in certifying the FEIR as complete, relied on information not actually incorporated or described and referenced in the FEIR, it failed to proceed in the manner provided in CEQA." (*Vineyard*, *supra*, 40 Cal.4th at p. 442.)

In contrast, as we have discussed, in the present case the County provided in the EIR a detailed summary of the opinions of Patane's lighting expert, Benya, that were submitted with Patane's comments, as well as the detailed responses of the County's lighting expert, Hinckley, based on Hinckley's technical memorandum attached to the DEIR. Therefore, unlike the facts in *Vineyard*, the record reflects that the County did not rely on information not incorporated or described or referenced in the FEIR in certifying the FEIR.

17

## IV.  DISPOSITION

The May 4, 2020 judgment is affirmed.  Costs on appeal are awarded to respondents.

_____

ELIA, ACTING P.J.

WE CONCUR:



_____

BAMATTRE-MANOUKIAN, J.



_____

DANNER, J.



*Patane v. County of Santa Clara et al*.
H048133